**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**KEITH L. SNYDER,**

                                        **Plaintiff,**

                        v.                                        5:05-CV-1009
                                                                (FJS/DEP)

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

                                        **Defendant.**
_____

**APPEARANCES**                                                **OF COUNSEL**

**OLINSKY & SHURTLIFF, LLP**                 **HOWARD OLINSKY, ESQ.**
300 South State Street, 5th Floor
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                     **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
James Hanley Federal Building
and United States Courthouse
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SOCIAL SECURITY ADMINISTRATION**     **DENNIS J. CANNING, ESQ.**
**OFFICE OF REGIONAL COUNSEL,**
**REGION II**
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court are Magistrate Judge Peebles' Report and Recommendation, Plaintiff's objections, and Defendant's response to Plaintiff's objections.

**II. BACKGROUND**

Plaintiff Keith Snyder suffers from several medical conditions, including the residual effects of lower back surgery and a right rotator cuff surgical repair, carpel tunnel syndrome, chronic obstructive pulmonary disease, and Hepatitis C. At the time of the administrative hearing in September 2003, Plaintiff was fifty-two years old.

Since dropping out of high school in the ninth or tenth grade, Plaintiff has worked as a laborer for numerous employers. Most recently, he worked on an egg farm, before being terminated in November 2001. Immediately prior to his work at the egg farm, Plaintiff worked at Syroco, where he operated a plastic injection molding machine. Syroco laid him off in March 2001.

Plaintiff applied for disability insurance and supplemental security insurance benefits in July 2002, claiming a disability onset date of November 4, 2001. After his applications were denied, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on September 10, 2003. In a decision dated December 9, 2003, the ALJ found that Plaintiff did not have a disability. The ALJ's decision became the Commissioner's final determination on June 15, 2005, when the Social Security Administration's Appeals Council refused Plaintiff's request for a review of the ALJ's decision.

Plaintiff commenced this action on August 10, 2005, to challenge the Commissioner's final determination. In his complaint, Plaintiff alleged that the ALJ neglected to develop the record with regard to his claimed mental impairments and that the ALJ's finding of residual functional capacity ("RFC") was not supported by the record or evidence of his medical conditions. Plaintiff also alleged that the ALJ's reliance on the medical-vocational guidelines produced an inaccurate assessment of available work because of Plaintiff's exertional and non-extertional limitations. For all of these reasons, Plaintiff asked the Court to vacate the Commissioner's determination and remand the matter with a directed finding of disability to calculate benefits.

After reviewing the administrative record, the ALJ's decision, and Plaintiff's arguments, Magistrate Judge Peebles found that the ALJ properly determined, based on substantial evidence, that Plaintiff did not have a disability. Specifically, Magistrate Judge Peebles concluded that the ALJ was under no duty to develop the record further to resolve inconsistencies in the medical evidence or to analyze Plaintiff's alleged mental impairments. He also found that the ALJ had discretion to afford no weight to the opinion of a physician who examined Plaintiff on one occasion for a second opinion; that there was sufficient evidence in the record to support the ALJ's RFC finding; and that none of Plaintiff's non-exertional limitations precluded him from performing light work to an extent that made the ALJ's use of the grid inaccurate.

Plaintiff objects to Magistrate Judge Peebles' Report and Recommendation on two grounds. First, he argues that Magistrate Judge Peebles failed to address his argument that the ALJ failed to apply the correct legal standards in evaluating Plaintiff's mental impairments. In addition, Plaintiff asserts that Magistrate Judge Peebles did not address the ALJ's error in

affording no weight to Dr. Smallman's opinion. The Court will address each of these objections in turn.

### III. DISCUSSION

**A.     Standard of review**

A district court may accept, reject or modify the recommendations of a magistrate judge. *See* 28 U.S.C. § 636(b)(1). A district court conducts a *de novo* review of the portions of the magistrate judge's report to which a party objects. *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). *De novo* review, however, is not required if a party fails to file specific objections. *See Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003). Nor is a court required to conduct a *de novo* review where a party's objections to the magistrate judge's recommendations are nothing more than a rehash of the arguments he made in his original pleadings. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (citation omitted). Finally, even if the parties file no objections, the court must ensure that the face of the record contains no clear error. *See Chimarev*, 280 F. Supp. 2d at 212.

In reviewing the Commissioner's final determination, the district court is restricted to deciding whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's decision. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (citation omitted). If the record contains substantial support for the ALJ's decision, the reviewing court must not substitute its own judgment for that of the Commissioner. *See Veino*, 312 F.3d at 586. However, where the reviewing court reasonably doubts whether the Commissioner applied the correct legal

standard, the court may not affirm the Commissioner's decision even if there is substantial evidence to support that decision. *See Barnett*, 13 F. Supp. 2d at 314 (citing *Johnson [v. Bowen*, 817 F.2d 983,] 986 [(2d Cir. 1987)]).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1998) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)) (other citation omitted).

**B.    The ALJ's failure to evaluate Plaintiff's mental impairments**

Magistrate Judge Peebles found that the ALJ did not err in failing to conduct a mental-impairment analysis because Plaintiff did not "mention or seek treatment for any mental impairment during the relevant time period." *See* Report and Recommendation at 26. Specifically, Magistrate Judge Peebles concluded that, although Plaintiff had the burden of showing medical evidence indicating the possibility of a mental impairment, he had not done so. To support this conclusion, Magistrate Judge Peebles pointed to the following: (1) Plaintiff had not alleged any mental impairment when he applied for benefits on July 1, 2002; (2) at no time did Plaintiff seek treatment for any mental impairment; and (3) none of the doctors who examined Plaintiff noted that he had any mental problems. *See id.* at 25-26.

Plaintiff objects to Magistrate Judge Peebles' recommendations, arguing that Magistrate Judge Peebles should have focused his analysis on the ALJ's duty to develop the record regarding Plaintiff's mental impairments rather than on the severity of Plaintiff's mental impairments themselves. *See* Plaintiff's Objections at 2.

It is well-established that an ALJ has a duty to develop the record fully. *See Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citation omitted). However, the claimant bears the burden of supplying medical evidence indicating a mental impairment. *See id.*; 20 C.F.R. §§ 404.1514, 404.1508.

Under the regulations, the ALJ is required to "consider only impairment(s) [which the claimant says he has] or about which [the ALJ] receive[s] evidence." 20 C.F.R. § 404.1512(a). Section 404.1512, however, requires the ALJ to investigate further when evidence in the record suggests a possible impairment. *See Prentice v. Apfel*, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998). Moreover, an ALJ must investigate when the evidence indicates an impairment even if the claimant does not allege that impairment as a basis for disability. *See id.* Nonetheless, a claimant's failure to provide evidence of an impairment or to seek treatment for that impairment weakens his claim. *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989).

As Magistrate Judge Peebles found, the record is completely devoid of any evidence to indicate that Plaintiff suffered from any mental impairment during the relevant time period – between November 4, 2001, and December 3, 2003, the date of the ALJ's decision. The only reference in the record to depression occurred in 1999 and early 2000, when it was noted that Plaintiff "fel[t] depressed" and suffered from generalized anxiety. *See* Administrative Transcript ("Tr.") at 191, 385, 407-08. In fact, the most recent reference to Plaintiff feeling depressed

occurred in April 2000, preceding the alleged disability onset date by more than one year. *See id.* at 191.

Moreover, the Court's review of the record demonstrates that none of the doctors who treated Plaintiff during the relevant time period noted that Plaintiff showed any signs of a mental impairment. Furthermore, there is no evidence that Plaintiff was prescribed medication to treat any mental impairment or that he sought treatment for a mental impairment.

Since Plaintiff failed to provide the ALJ with any evidence that he suffered from a mental impairment and there is nothing in the record from which the ALJ could have inferred that Plaintiff suffered from any such impairment, the Court agrees with Magistrate Judge Peebles that the ALJ had no duty to develop the record further in this regard.

**C.     The ALJ's consideration of Dr. Smallman's medical assessment**

Magistrate Judge Peebles found that the ALJ properly exercised his discretion in giving no deference to Dr. Smallman's September 2003 assessment. *See* Report and Recommendation at 28. Dr. Smallman examined Plaintiff on one occasion for a "second opinion." *See id.* Magistrate Judge Peebles determined that this limited relationship between Plaintiff and Dr. Smallman did not qualify Dr. Smallman as a treating physician. *See id.* As a result, Magistrate Judge Peebles concluded that the ALJ was free to disregard Dr. Smallman's assessment without explanation. *See id.*

Plaintiff also states that Magistrate Judge Peebles misunderstood his argument and, therefore, failed to evaluate the ALJ's error. *See* Plaintiff's Objections at 4. Plaintiff asserts that he did not rely on the treating-physician rule in his brief; rather, he argued that the opinion of an

examining medical source must receive some weight. *See id.* at 4-5. Finally Plaintiff argues that, as an examining medical source, Dr. Smallman's assessment carries at least minimal evidentiary weight and that, therefore, the ALJ erred by disregarding Dr. Smallman's assessment entirely. *See id.* at 5.

To determine disability, an ALJ must consider every medical opinion in the case record and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b). The Commissioner has the discretion to resolve conflicting medical evidence. *See Veino*, 312 F.3d at 588.

A treating physician's opinion is afforded controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316. Although the regulations do not define the term "treating physician," the Second Circuit has interpreted that term to mean a physician who has provided treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the claimant. *See Schisler v. Sullivan*, 3 F.3d 563, 569 (2d Cir. 1993); *Coty v. Sullivan*, 793 F. Supp. 83, 85-86 (S.D.N.Y. 1992) (citation omitted).

There are several factors that determine the amount of weight that an ALJ gives to a non-treating source's medical opinion. *See* 20 C.F.R. §§ 404.1527, 416.927; *Barnett*, 13 F. Supp. 2d at 316 (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)) (other citation omitted). These factors include the length, nature, and extent of the treatment relationship, the frequency of examination, evidence to support the medical opinion, consistency, and specialization. *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff's argument that the ALJ erred by according no weight to Dr. Smallman's

September 2003 assessment has no merit. Dr. Smallman examined Plaintiff on one occasion, July 30, 2003, for a second opinion. Although Dr. Smallman suggested further examination, no follow-up was completed. *See* Tr. at 261-62, 307-11. One examination clearly does not constitute ongoing treatment or create a physician-patient relationship. Therefore, Dr. Smallman does not meet the definition of a treating physician.

Since Dr. Smallman is a non-treating medical source, the ALJ had discretion to determine the appropriate weight to give his assessment by considering the factors in the regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. For this determination, the ALJ had to rely entirely on Dr. Smallman's examination notes and assessment from the one occasion that he saw Plaintiff. On the September 2003 assessment, Dr. Smallman chose to withhold the nature of his relationship with Plaintiff. *See* Tr. at 30. As a result, any evidence about the length, nature, and extent of the treatment relationship was confined to Dr. Smallman's assessment based on Plaintiff's July 2003 visit. Dr. Smallman also failed to indicate any clinical findings or objective signs. *See id.* at 307. He relied completely on Plaintiff's subjective complaints, rather than medical evidence. *See id.* Moreover, Dr. Smallman's examination and assessment both occurred after Plaintiff's severe impairment ended in February 2003. *See id.* at 25. Since the ALJ considered these factors in determining how much weight, if any, to accord Dr. Smallman's assessment, the Court finds that the ALJ did not err in this regard.

## IV. CONCLUSION

After carefully reviewing the entire record in this case, Magistrate Judge Peebles' Report and Recommendation, the parties' submissions, and the applicable law, and for the reasons stated

herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' November 14, 2007 Report and Recommendation is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: November 26, 2008
      Syracuse, New York

*/s/ Frederick J. Scullin, Jr.*
Frederick J. Scullin, Jr.
Senior United States District Court Judge